## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE No. 1:21-cv-21093-DPG

THE FERRARO LAW FIRM, P.A.,
a Florida professional association, and
TOTAL ASSET RECOVERY SERVICES
LLC, a Michigan limited liability company,

       Plaintiffs,

vs.

HUDDLESTON CAPITAL PARTNERS VIII
LLC, a Delaware limited liability company,
TIMOTHY D. SCRANTOM, ESQ.,
SCRANTOM DULLES INTERNATIONAL,
PLLC, a District of Columbia professional limited
liability company, KENNETH PLATT ELDER,
individually, G3 ANALYTICS LLC, a Michigan
limited liability company, and NOLAN COOPER,

       Defendants.

_____/

### DEFENDANT HUDDLESTON CAPITAL PARTNERS VIII LLC'S
### MOTION TO DISMISS THE FIRST AMENDED COMPLAINT WITH PREJUDICE
### AND SUPPORTING MEMORANDUM OF LAW

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................. 1

STATEMENT OF FACTS .................................................................................... 2

ARGUMENT ........................................................................................................ 5

I.    There Is No Personal Jurisdiction Over Defendant Huddleston in Florida. ...................... 5

    A.    Plaintiffs Fail to Show a *Prima Facie* Case of Personal Jurisdiction over Defendant Huddleston under Florida's Long-Arm Statute.................................... 5

    B.    Even If Florida's Long-Arm Statute Were Satisfied, Plaintiffs Fail to Establish that Jurisdiction over Defendant Huddleston Comports with Due Process. ........... 6

II.    This Court Lacks Subject Matter Jurisdiction over the Tortious Interference Claim....... 11

III.    The Amended Complaint Fails to State a Claim for Tortious Interference Against Defendant Huddleston. .................................................................................... 13

    A.    The Amended Complaint Insufficiently Alleges that Huddleston Intentionally and Unjustifiably Interfered with Plaintiffs' Attorney-Client Relationship................. 14

    B.    The Amended Complaint Does Not Sufficiently Allege that Defendant Huddleston's Alleged Interference Resulted in Damages to Plaintiffs. ............... 16

IV.    Plaintiff TARS Lacks Standing to Assert Claims Against Defendant Huddleston. ......... 19

    A.    Plaintiff TARS Lacks Article III Standing. ......................................................... 19

    B.    TARS Lacks the Authority to Bring the Amended Complaint............................. 19

CONCLUSION..................................................................................................... 20

# **TABLE OF AUTHORITIES**

## Cases

*Aligned Bayshore Holdings, LLC v. Westchester Surplus Lines Ins. Co.*, 2019 WL 7049878 (S.D. Fla. Dec. 23, 2019) .................................................................................................... 3

*AlphaMed Pharm. Corp. v. Arriva Pharm., Inc.*, 432 F. Supp. 2d 1319 (S.D. Fla. 2006) ..... 17, 18

*Alpha Tech. U.S.A. Corp. v. MLSNA Dairy Supply, Inc.*, 2013 WL 6195766 (M.D. Fla. Nov. 26, 2013) ................................................................................................ 5

*An USA Mgmt. Grp., LLC v. Fitness Publ'ns, Inc.*, 2015 WL 11233075 (S.D. Fla. Mar. 4, 2015) ..................................................................................... 7, 8, 10

*Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102 (1987)..................................... 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................ 13, 18

*Aviation One of Fla., Inc., v. Airborne Ins. Consultants (PTY), Ltd.*, 722 Fed. Appx. 870 (11th Cir. 2018) ...................................................................................................................... 9

*Bartfield v. Murphy*, 578 F. Supp. 2d 638 (S.D.N.Y. 2008) ....................................................... 13

*Borislow v. Canaccord Genuity Grp. Inc.*, 2014 WL 12580259 (S.D. Fla. Jun. 27, 2014)............ 6

*Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172 (11th Cir. 2002).............................................. 18

*BTG Patent Holdings, LLC v. Bag2Go*, 193 F. Supp. 3d 1310 (S.D. Fla. 2016) .......................... 9

*Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201 (11th Cir. 2015) ...................................... 6

*Chavez v. Coro*, 2019 WL 5209446 (S.D. Fla. July 18, 2019).................................................... 13

*Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286 (11th Cir. 2000) ................................. 8

*Crowe v. Paragon Relocation Resources, Inc.*, 506 F. Supp. 2d 1113 (N.D. Fla. 2007) .............. 6

*Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076 (11th Cir. 2019) ................................... 19

*Demov, Morris, Levin & Shein v. Glantz*, 53 N.Y.S 2d 553 (1981) ............................................ 12

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249 (11th Cir. 2010).......... 9

*Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248 (11th Cir. 2015)........................ 13, 16

*Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334 (S.D. Fla. 1999).................................................................................................................... 16

*Enteris Biopharma, Inc. v. Clinical Pharmacology of Miami, Inc.*, 2015 WL 12085848 (S.D. Fla. Mar. 20, 2015) .............................................................................................. 14, 15

*Ethan Allen v. Georgetown Manor*, 647 So. 2d 812 (Fla. 1994) ................................................ 14

*Ethyl Corp. v. Balter*, 386 So. 2d 1220 (Fla. 3d DCA 1980)..................................................... 15

*Escadote I Corp. v. Ocean Three Condo. Ass'n, Inc.*, 307 So.3d 938 (Fla. 3d DCA 2020)......... 16

*Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 208 F. Supp. 2d 1310 (S.D. Fla. 2002)................................................................................................................... 17

*Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805 (11th Cir. 2003)............. 11, 12

*Fin. Bus. Equip. Sols., Inc. v. Quality Data Sys*., 2008 WL 4753710
   (S.D. Fla. Oct. 27, 2008) ........................................................................................ 17

*First Telebanc Corp. v. First Union Corp*., 2007 WL 9702557 (S.D. Fla. Aug. 6, 2007) ........... 20

*Fraser v. Smith*, 594 F.3d 842 (11th Cir. 2010)............................................................................. 7

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ............... 19

*Friends of the Everglades v. U.S. Envt'l Prot. Agency*, 699 F.3d 1280 (11th Cir. 2012)............ 11

*Future Tech. Today, Inc. v. OSF Healthcare Sys*., 218 F.3d 1247 (11th Cir. 2000) ................... 10

*Goforit Entm't LLC v. Digimedia.com L.P.*, 513 F. Supp. 2d 1325 (M.D. Fla. 2007) ................ 10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)...................................... 6

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) .................................... 8

*Jeffers v. Kerzner Int'l Hotels Ltd.*, 319 F. Supp. 3d 1267 (S.D. Fla. 2018) .................................. 3

*Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp*., 534 F. Supp. 2d 1290
   (S.D. Fla. 2008).......................................................................................................... 19

*Malekmarzban v. Levine*, 2014 WL 1600576 (S.D. Fla. Apr. 21, 2014)................................. 11, 12

*Mattocks v. Black Ent. Television LLC*, 43. F. Supp. 3d 1311 (S.D. Fla. 2014)......................... 16

*Maxi-Taxi of Fla., Inc. v. Lee Cty. Port Auth*., 2008 WL 1925088
   (M.D. Fla. Apr. 29, 2008) ..................................................................................... 14, 15

*McGee v. Cook*, 2011 WL 1365024 (M.D. Fla. Apr. 11, 2011) ..................................................... 6

*Miller v. Gizmodo Media Grp., LLC*, 383 F. Supp. 3d 1365 (S.D. Fla. 2019) ......................... 7, 8

*Networkip, LLC v. Spread Enters., Inc.*, 922 So. 2d 355 (Fla. 3d DCA 2006)............................ 15

*Oliva v. Geovera Specialty Ins. Co.*, 2019 WL 4183582 (S.D. Fla. Sept. 4, 2019)..................... 12

*Omega IM Grp., LLC v. Louidar, LLC*, 2018 WL 1069446 (S.D. Fla. Feb. 16, 2018), *R. & R.
   adopted*, 2018 WL 1875835 (S.D. Fla. Mar. 6, 2018) ......................................... 9, 10

*OneSource Facility Servs. v. Mosbach*, 2008 WL 11430040 (M.D. Fla. Nov. 18, 2008)............ 17

*PG Creative, Inc. v. Affirm Agency, LLC*, 2019 WL 5684219 (S.D. Fla. Oct. 31, 2019)........... 8, 9

*Realauction.com, LLC v. Grant St. Grp., Inc.*, 82 So. 3d 1056 (Fla. 4th DCA 2011)................. 12

*Romika-USA, Inc. v. HSBC Bank USA*, N.A., 514 F. Supp. 2d 1334 (S.D. Fla. 2007) .......... 15, 16

*Sostchin v. Doll Enters., Inc*., 847 So. 2d 1123 (Fla. 3d DCA 2003) .......................................... 18

*Stanton v. Berkley Assur. Co.*, 2020 WL 6781524 (S.D. Fla. July 17, 2020).............................. 20

*Total Asset Recovery Servs. LLC v. Metlife, Inc., et al*., 139 N.Y.S. 3d 3 (1st Dep't 2020) ......... 4

*VIS Holdings Corp. v. Cooper*, 2007 WL 9702900 (S.D. Fla. Dec. 11, 2007) .............................. 5

*Waite v. All Acquisition Corp.*, 901 F.3d 1307 (11th Cir. 2018) .............................................. 6, 8

*Walden v. Fiore*, 571 U.S. 277 (2014) ................................................................................... 7, 8, 9

**Statutes**

28 U.S.C. § 1332 ........................................................................................................ 11

Fla. Stat. § 48.193 .................................................................................................... 5, 6

**Rules**

F.R.E. 201(b) ............................................................................................................... 3

Fed. R. Civ. P. 12(b)(1) ..................................................................................... passim

Fed. R. Civ. P. 12(b)(2) ...................................................................................... 1, 5, 20

Fed. R. Civ. P. 12(b)(6) ..................................................................................... passim

**Constitutional Provisions**

U.S. Const. Art. III ................................................................................................ 2, 19

U.S. Const. Am. XIV ............................................................................................... 2, 7

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), Defendant Huddleston Capital Partners VIII LLC ("Huddleston") moves to dismiss the sole cause of action against itself, Count VIII of the First Amended Complaint and Demand for Jury Trial [D.E. No. 10] (the "Amended Complaint"), with prejudice.

## INTRODUCTION

In 2020, Defendant Huddleston, a Delaware limited liability company, purchased from a New York federal receivership proceeding a loan ("TARS Loan") which had been taken out by Plaintiff Total Asset Recovery Services LLC ("TARS") and its consultant, both Michigan limited liability companies, to finance the prosecution of a *qui tam* action in New York state court. As is common in such transactions, the loan documents granted the lender a pledge of the TARS members' equity interests with a power of attorney that was self-effectuating upon an event of default, providing the lender with the ability to take immediate control of TARS without seeking court intervention or obtaining the consent of TARS's members. After the purchase, Huddleston determined that events of default had occurred and accordingly exercised its contractual rights on February 10, 2021, including its right to assume the management of TARS. Following multiple letters to Plaintiff The Ferraro Law Firm P.A. ("Ferraro Firm") – TARS's counsel in the New York *qui tam* action – which went ignored, Huddleston, in its capacity as attorney-in-fact for TARS, terminated the Ferraro Firm and demanded a transfer of all case materials.

The Ferraro Firm and the individual members of TARS responded to these legitimate measures with a series of retaliatory actions. The day after it was terminated, the Ferraro Firm filed an unauthorized third amended complaint in the New York *qui tam* action. After Huddleston as attorney-in-fact for TARS filed a motion to substitute, the Ferraro Firm sued Huddleston and others in two separate forums: an action in the United States District Court for the Southern District of

New York seeking declaratory judgment regarding the validity of Huddleston's actions (the "S.D.N.Y. Action"),[1] and this action which alleges tortious interference with a purported business relationship between Plaintiffs Ferraro Firm and TARS.

Despite an early amendment to their complaint, Plaintiffs' case against Huddleston still falls short. First, Plaintiffs do not and cannot establish a *prima facie* case of personal jurisdiction, either general or specific, under the Florida long-arm statute or the Due Process Clause of the U.S. Constitution. Second, Plaintiffs have failed to plead sufficient allegations to satisfy the diversity jurisdiction requirement of an amount in controversy exceeding $75,000. Third, the conclusory allegations in the Amended Complaint are insufficient to show that Defendant Huddleston intentionally and unjustifiably interfered with Plaintiffs' attorney-client relationship in a way that resulted in damages to Plaintiffs as is needed for a claim for tortious interference. Finally, Plaintiff TARS lacks Article III standing and the authority to bring this action. Accordingly, the Court should dismiss the case against Huddleston with prejudice.

## **STATEMENT OF FACTS**

Plaintiff TARS is a limited liability company organized under the laws of Michigan which was formed to pursue *qui tam* litigation based on information developed by Defendant Kenneth Elder and his Michigan-based limited liability company, Defendant G3 Analytics LLC ("G3"). Am. Compl. ¶¶ 36–37, 49–51, 62. Plaintiff Ferraro Firm is counsel for TARS in a *qui tam* action pending in the Supreme Court of the State of New York (the "*Qui Tam* Action").[2] *Id.* ¶ 68. Huddleston is a Delaware-registered limited liability company formed on August 2, 2018. Am.

---

[1] The Southern District of New York action is *Total Asset Recovery Services LLC, et al. v. Huddleston Capital Partners VIII LLC, et. al.*, No. 2021-CV-2466.

[2] The *Qui Tam* Action is *Total Asset Recovery Services, LLC on behalf of the State of New York v. Metlife, Inc., et al*., Index No. 115336/2010 (N.Y. Sup. Ct.).

Compl. ¶¶ 9, 40. Huddleston's manager and sole member is Acacia Trustees Limited, a Nevis trust corporation wholly owned by Kristina Phelan, a resident of the United Kingdom. *Id.* ¶¶ 24–26, 41.

In 2014, Plaintiff TARS sought financing from Platinum Partners, a hedge fund firm ("Platinum"), to continue prosecution of the *Qui Tam* Action. Am. Compl. ¶¶ 10, 80. In November 2014, Plaintiff TARS and Defendant G3 obtained a $6 million loan (the "TARS Loan") from Platinum via Hamilton Capital Partners VIII LLC ("Hamilton"), a funding vehicle registered in Delaware, and executed a series of documents (the "Loan Documents") with Hamilton as Lender, TARS and G3 as Borrowers, and the members of TARS and G3 as Pledgors and Guarantors. *Id.* ¶¶ 4, 83; S.D.N.Y. Action, D.E. 1-1 (Ex. A to Complaint, including the Nonrecourse Loan and Security Agreement), attached as Exhibit 1; *Qui Tam* Action, D.E. 200 (Pledge Agreements), attached as Exhibit 2.[3] The Loan Documents granted the Lender a pledge of the TARS members' equity interests in TARS with a self-effectuating power of attorney upon Lender's determination of an event of default. Exhibit 1 § 6.4; Exhibit 2 § 9(a); *see also* Am. Compl. ¶ 107.

In December 2016, the Securities and Exchange Commission filed an action against certain Platinum executives and obtained the appointment of a receiver to oversee a liquidation of Platinum's assets. *S.E.C. v. Platinum Mgmt. (NY) LLC et al.*, No. 2016-CV-6848 (E.D.N.Y.) ("SEC Action"); *see also* Am. Compl. ¶ 10. Since July 6, 2017, the receiver has been former United States Bankruptcy Judge Melanie Cyganowski ("Receiver"). SEC Action, D.E. 2016. Meanwhile, in the *Qui Tam* Action, Defendants filed motions to dismiss which were granted on March 29,

---

[3] A court may consider a document attached to a motion to dismiss if the document is central to the plaintiff's claim and undisputed. *Jeffers v. Kerzner Int'l Hotels Ltd.*, 319 F. Supp. 3d 1267, 1270 (S.D. Fla. 2018); s*ee, e.g.,* Am. Compl. ¶¶ 4, 10–11, 28–29, 80–83, 85–86, 104–07. Additionally, on a motion to dismiss, consistent with Federal Rule of Evidence 201(b), "courts regularly take judicial notice of record documents from other proceedings." *Aligned Bayshore Holdings, LLC v. Westchester Surplus Lines Ins. Co.*, 2019 WL 7049878, at *3 (S.D. Fla. Dec. 23, 2019).

2019. Am. Compl. ¶¶ 12, 75; *Qui Tam* Action, D.E. 154, 156. As the Receiver noted, this ruling severely diminished prospects for the repayment of the TARS Loan, reducing its value as an asset. SEC Action, D.E. 461 at 23. In August 2020, the Receiver marketed multiple "remnant assets" for sale, including the TARS Loan. Huddleston submitted bids for each of these assets and prevailed as the highest bidder on four, including the TARS Loan. Am. Compl. ¶ 105; SEC Action, D.E. 544 at 16; D.E. 461 at 23. Subsequently, on December 10, 2020, the New York Appellate Division reversed the lower court's dismissal of the *Qui Tam* Action. Am. Compl. ¶ 76; *Total Asset Recovery Servs. LLC v. Metlife, Inc., et al.*, 139 N.Y.S. 3d 3 (1st Dep't 2020). On December 14, 2020, the Receiver and Huddleston executed an Assignment and Assumption Agreement in which Huddleston acquired all of the Lender's rights, title, and interests in the TARS Loan Documents. SEC Action, D.E. 461 at 23; D.E. 561 at 13; Am. Compl. ¶ 78.

Huddleston subsequently discovered that TARS had committed numerous Events of Default under the Loan Documents. Accordingly, as the Lender's successor-in-interest, Huddleston exercised its contractual rights, including the right to assume management of TARS as its attorney-in-fact, and informed TARS, G3 and their respective members of these actions by letter on February 10, 2021 ("Notice") sent by Huddleston's New York-based counsel. Am. Compl. ¶¶ 28, 107; S.D.N.Y. Action, D.E. 1-2 at 2-8 (Ex. B to the Complaint, which includes the Notice), attached as Exhibit 3. Huddleston sent a copy of the Notice to the Ferraro Firm asking for an update on the *Qui Tam* Action and directing the Firm to cease work until further instruction. Exhibit 3 at 1; Am. Compl. ¶ 107. After the Ferraro Firm failed to respond to this and other communications, Huddleston, as attorney-in-fact for TARS, terminated the firm as TARS's counsel on March 4, 2021. Am. Compl. ¶ 114; *Qui Tam* Action, D.E. 182. The next day, the Ferraro Firm filed a Third Amended Complaint ("TAC"), purportedly on behalf of TARS, in the New York *Qui Tam* Action,

forcing Huddleston, as TARS's attorney-in-fact, to file a motion to substitute counsel, transfer case files, and withdraw the TAC ("Motion to Substitute"). Am. Compl. ¶¶ 31, 114; *Qui Tam* Action, D.E. 174, 178–186; 194–208.

On March 22, 2021, simultaneously with filing its opposition to the Motion to Substitute in the *Qui Tam* Action,[4] the Ferraro Firm filed two federal lawsuits naming Huddleston as a defendant: (1) the S.D.N.Y. Action filed on behalf of TARS and its members (including two members who are attorneys at the Ferraro Firm), which seeks a declaratory judgment regarding the occurrence of Events of Default and the validity of Huddleston's actions; and (2) the initial Complaint in this action, which was replete with errors, including the omission of a cause of action against Huddleston. *See generally* D.E. No. 1 ¶¶ 115–135. On April 15, 2021, the Ferraro Firm filed an Amended Complaint with a single cause of action against Huddleston. Am. Compl. ¶¶ 164–168. Huddleston now moves to dismiss this claim with the instant Motion.

## ARGUMENT

## I.    There Is No Personal Jurisdiction Over Defendant Huddleston in Florida.

### A.    Plaintiffs Fail to Show a *Prima Facie* Case of Personal Jurisdiction over Defendant Huddleston under Florida's Long-Arm Statute.

To establish a *prima facie* case of personal jurisdiction over Defendant Huddleston, Plaintiffs must first establish general or specific personal jurisdiction under Florida's long-arm statute. *See* Fla. Stat. §§ 48.193(1)–(2).[5] Plaintiffs have done neither. Indeed, nothing in the

---

[4] *Qui Tam* Action, D.E. 188–193.

[5] "On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the defendants." *Alpha Tech. U.S.A. Corp. v. MLSNA Dairy Supply, Inc.*, 2013 WL 6195766, at *2 (M.D. Fla. Nov. 26, 2013). The plaintiff must "plead sufficient material <u>facts</u> to establish the basis for exercise of such jurisdiction." *VIS Holdings Corp. v. Cooper*, 2007 WL 9702900, at *4 (S.D. Fla. Dec. 11, 2007) (emphasis added) (internal citation omitted).

Amended Complaint even indicates which type of jurisdiction Plaintiffs claim. Given the impossibility of Plaintiffs establishing general jurisdiction in Florida,[6] Huddleston assumes Plaintiffs claim specific jurisdiction under Section 48.193(1)(a)(2) of the Florida long-arm statute which provides for jurisdiction "over causes of action arising from or related to <u>the defendant's actions within Florida</u>" (emphasis added). This jurisdictional premise fails, as Huddleston has insufficient contacts with Florida related to its purported tortious interference to be subject to suit in this district. Not one factual allegation in the Amended Complaint even references Huddleston's actions <u>within</u> Florida. As such, Plaintiffs have not shown that Defendant committed a tortious act within Florida that would warrant personal jurisdiction. *See, e.g., Borislow v. Canaccord Genuity Grp. Inc.*, 2014 WL 12580259, at \*4–6 (S.D. Fla. June 27, 2014); *McGee v. Cook*, 2011 WL 1365024, at \*4–5 (M.D. Fla. Apr. 11, 2011).

### B. Even If Florida's Long-Arm Statute Were Satisfied, Plaintiffs Fail to Establish that Jurisdiction over Defendant Huddleston Comports with Due Process.

Even if the Court were inclined to extend Florida's long-arm statute to capture Defendant Huddleston's allegedly tortious conduct, this exercise of personal jurisdiction would violate the

---

[6] As a Delaware limited liability company with a Nevis trust company as its sole member, Am. Compl. ¶¶ 40-41, general jurisdiction over Huddleston would require Plaintiffs to show that Huddleston's contacts with the forum were "so continuous and systematic" as to render it "essentially at home" here. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011). Nothing in the Amended Complaint remotely suggests such extensive contacts. Plaintiffs do not allege, for example, that Huddleston has an office, employees, or property in Florida. *See Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1318 (11th Cir. 2018) (observing defendant's contacts did not "closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business" and thus finding that the exercise of general jurisdiction would violate due process) quoting *Carmouche*, 789 F.3d at 1205; *Crowe v. Paragon Relocation Resources, Inc.*, 506 F. Supp. 2d 1113, 1123 (N.D. Fla. 2007) (finding no general jurisdiction where defendant had no offices, subsidiaries, agents, or employees in Florida and did not own property in Florida or have a Florida telephone number or bank account). An exercise of general personal jurisdiction over Defendant Huddleston under Section 48.193(2) of the Florida long-arm statute is thus unconstitutional.

Due Process Clause of the Fourteenth Amendment. The proper question in a due process analysis is not where the plaintiff experienced a particular injury "but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). In specific jurisdiction cases, the Eleventh Circuit applies a three-part test examining (1) whether the plaintiff's claims "arise out of or relate to at least one of the defendant's contacts within the forum;" (2) whether the non-resident defendant "purposefully availed himself of the privilege of conducting activities" within Florida, thus invoking the benefit of Florida's laws; and (3) whether personal jurisdiction "comports with traditional notions of fair play and substantial justice." *Miller v. Gizmodo Media Group, LLC*, 383 F. Supp. 3d 1365, 1372 (S.D. Fla. 2019). The plaintiff bears the burden of establishing the first two prongs, after which the burden shifts to the defendant. *Id.* Although Plaintiffs establish neither of the first two prongs, Huddleston addresses all three below.

1.   Plaintiffs' Tortious Interference Claim Does Not "Arise Out Of" or "Relate" to Huddleston's Alleged Contacts with Florida.

To establish relatedness between a claim and a defendant's contacts, a plaintiff must, at a minimum, demonstrate that the defendant had "some contact with the forum state and that the contact was a but-for cause of the alleged tort." *An USA Mgmt. Grp., LLC v. Fitness Publ'ns, Inc.*, 2015 WL 11233075, at *3 (S.D. Fla. Mar. 4, 2015) quoting *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (emphasis original). The contacts giving rise to the alleged tort must be created within the forum by the "defendant himself." *Walden*, 571 U.S. at 284 (emphasis original).

Notably absent from Plaintiffs' Amended Complaint are allegations that Defendant Huddleston had any contacts with Florida. The Amended Complaint merely implies such contacts by alleging that communications were sent by Huddleston's New York counsel to Plaintiffs, Am. Compl. ¶¶ 107, 111, and averring that Plaintiff Ferraro Firm and some of the members of Plaintiff TARS are residents of Florida, *id.* ¶¶ 37, 38. While these acts demonstrate limited contact between

7

Defendant Huddleston and Plaintiffs, they say nothing about Huddleston's contact with Florida as the forum. *See PG Creative*, 2019 WL 5684219, at *4–5. That Plaintiffs are a Florida law firm and an out-of-state limited liability company with some members domiciled in Florida is "wholly deficient evidence of" Defendant's contacts with Florida. *Id.* at *5; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). Also missing from the Amended Complaint are allegations that Huddleston's purported contacts with Florida are the but-for cause of the purported tortious interference. *See Waite*, 901 F.3d at 1315; *PG Creative*, 2019 WL 5684219, at *4–5. Accordingly, Plaintiffs cannot satisfy the first prong of the due process analysis, and the claim against Huddleston must be dismissed with prejudice. *PG Creative*, 2019 WL 5684219, at *4–5; *USA Mgmt. Grp.*, 2015 WL 11233075, at *3.

2.     Plaintiffs Fail to Establish Huddleston Purposefully Availed Itself of the Privilege of Conducting Activities Within Florida.

Even assuming Defendant Huddleston had contacts with Florida related to the tortious interference claim, Plaintiffs fail to show that Huddleston has purposefully availed itself "of the privilege of conducting activities" within Florida "thus invoking the benefits and protections of its laws." *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). Purposeful availment requires that the tort (1) be intentional; (2) be aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state. *Miller*, 383 F. Supp. 3d at 1373. Mere injury to a forum resident is not enough; the plaintiff must prove that a defendant's actions demonstrate his "own affiliation with the State," not simply "the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." *PG Creative*, 2019 WL 5684219, at *5 quoting *Walden*, 571 U.S. at 286. The heart of this Due Process protection is fair warning; the defendant's conduct and connection with the forum must be such "that he should reasonably anticipate being haled into court there." *PG Creative*,

8

2019 WL 5684219, at *5 quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010).

Plaintiffs' allegations utterly miss this mark. The Amended Complaint asserts no facts – nor can it – showing that Huddleston intentionally committed a tortious act expressly aimed at Florida that caused Plaintiffs harm and that Huddleston should have anticipated would occur in Florida. Instead, the Amended Complaint alleges exactly what the Supreme Court and the Eleventh Circuit have held is insufficient for personal jurisdiction: that Huddleston communicated with Plaintiffs, some of whom are Florida residents. *Aviation One of Fla., Inc., v. Airborne Ins. Consultants (PTY), Ltd*., 722 Fed. Appx. 870, 880 (11th Cir. 2018) citing *Walden*, 571 U.S. at 285; *see also PG Creative*, 2019 WL 5684219, at *6–7; *BTG Patent Holdings, LLC v. Bag2Go*, 193 F. Supp. 3d 1310, 1320 (S.D. Fla. 2016). Defendant Huddleston purchased a loan from a New York federal receivership proceeding, a loan that was made to two Michigan limited liability companies for purposes of financing the *Qui Tam* Action in New York, and sent notice of its purchase and intent to foreclose to the companies and their members as well as to the counsel in the *Qui Tam* Action. Defendant Huddleston could not, and should not, have reasonably anticipated being haled into court in Florida based on these actions. *See Omega IM Grp., LLC v. Louidar, LLC*, 2018 WL 1069446, at *13 (S.D. Fla. Feb. 16, 2018), *R. & R. adopted*, 2018 WL 1875835 (S.D. Fla. Mar. 6, 2018). Since Huddleston has not purposefully availed itself of this forum, the Court should grant Huddleston's motion to dismiss for lack of personal jurisdiction.

3. <u>Subjecting Huddleston to Jurisdiction in Florida Offends Traditional Notions of Fair Play and Substantial Justice.</u>

Even if the Court could find purposeful availment on the part of Defendant Huddleston, the Court should dismiss Huddleston from this case because the exercise of personal jurisdiction offends traditional conceptions of fair play and substantial justice. In making this determination,

courts look at five factors: (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive social policies. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1251–52 (11th Cir. 2000).

The first three factors weigh entirely in Defendant Huddleston's favor. Huddleston has no ties to Florida. *See* Section I.A. *supra*. Litigating this matter in Florida has already burdened Huddleston by forcing it to retain local counsel, an onus that would be magnified in discovery since many of the witnesses and much of the evidence related to Plaintiffs' tortious interference claim are in New York. *See USA Mgmt. Grp.,* 2015 WL 11233075, at *3. Second, Florida has no greater interest in adjudicating this claim than any other state given that the claim, at its core, asserts tortious interference by a Delaware limited liability company with an attorney-client relationship in a pending New York state action resulting from communications sent by Defendant's New York counsel to Plaintiffs concerning a loan purchased in New York. *See Omega IM Grp., LLC,* 2018 WL 1069446, at *14. Third, Plaintiffs are already seeking a more convenient and effective relief in New York; they have opposed the Motion to Substitute in the *Qui Tam* Action and announced the Ferraro Firm's intent to seek compensation via *quantum meruit* there if removed as counsel; and they have sought a declaratory judgment in the S.D.N.Y. Action. Am. Compl. ¶¶ 34. *See USA Mgmt. Grp.*, 2015 WL 11233075, at *4. The fourth factor, the judicial system's interest, also weighs against jurisdiction here as Florida's interest in obtaining an efficient resolution of the dispute is minimal given the significant non-jurisdictional contacts. *See Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 115 (1987). Lastly, "on balance, the fifth factor is seemingly neutral." *Goforit Entm't LLC v. Digimedia.com L.P.*, 513 F. Supp. 2d 1325,

1334 (M.D. Fla. 2007). Accordingly, fair play and substantial justice requires dismissal of the tortious interference claim against Defendant Huddleston with prejudice.

## II.    <u>This Court Lacks Subject Matter Jurisdiction over the Tortious Interference Claim.</u>

It is axiomatic that federal courts are courts of "limited jurisdiction" and "possess only that power authorized by Constitution and statute[.]" *Friends of the Everglades v. U.S. Envt'l Prot. Agency*, 699 F.3d 1280, 1289 (11th Cir. 2012). Plaintiffs seek to invoke diversity jurisdiction, Am. Compl. ¶ 54, which requires that the matter in controversy exceed $75,000 "exclusive of interest and costs." 28 U.S.C. § 1332(a)(1). Yet Plaintiffs' quantification of damages is simply a vague "prayer" for judgment "in excess" of $75,000. Am. Compl. ¶ 168. Where a plaintiff fails to quantify damages with a specific dollar amount, it is "well-established" that plaintiff "'bears the burden of proving <u>by a preponderance of the evidence</u> that the claim'" meets the jurisdictional minimum. *Malekmarzban v. Levine*, 2014 WL 1600576, at *1 (S.D. Fla. Apr. 21, 2014) quoting *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (emphasis added). Plaintiffs' "prayer" falls deficiently short of this standard, thus the claims against Defendant Huddleston must be dismissed with prejudice for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

Plaintiffs claim four categories of damages: (1) "legal services plus costs" for the defense of two lawsuits predating Huddleston's formation, defense of the Motion to Substitute in the *Qui Tam* Action in New York, and the prosecution of this action and the S.D.N.Y. Action; (2) "the prospective loss of the Ferraro Firm's contingent fee" in the *Qui Tam* Action; (3) the "loss" of Plaintiff Ferraro Firm's "ability to properly represent TARS in the *Qui Tam* Action;" and (4) "TARS's ultimate recovery as relator" in the *Qui Tam* Action. Am. Compl. ¶ 168. None of these categories, however, count toward the jurisdictional amount in controversy.

First, Plaintiffs' supposed attorneys' fees cannot be considered because the "general rule is that attorneys' fees do not count toward the amount in controversy unless they are allowed for by statute or contract." *Oliva v. Geovera Specialty Ins. Co.*, 2019 WL 4183582, at *1 (S.D. Fla. Sept. 4, 2019) quoting *Federated Mut. Ins.*, 329 F.3d at 808 n.4. Plaintiffs identify no such basis for attorneys' fees, thus this category must be disregarded.

Second, the loss of a contingency fee is far too speculative for Plaintiffs to show, much less by a preponderance of the evidence, that the amount in controversy exceeds $75,000. Under the terms of its engagement letter with TARS, the Ferraro Firm receives a fee only upon TARS's recovery, whether by settlement or otherwise, *see* Am. Compl., Ex. A ¶ 6 (D.E. 10-1), and thus Plaintiff will not lose this fee unless and until (1) the New York court in the *Qui Tam* Action grants the Motion to Substitute, (2) TARS defeats the inevitable motion to dismiss the Third Amended Complaint, and (3) the *Qui Tam* Action results in the State of New York recovering funds from the defendants. Such hypothetical losses cannot satisfy the amount in controversy requirement. *Malekmarzban*, 2014 WL 1600576, at *1 (granting motion to dismiss for lack of subject matter jurisdiction where damages were "unliquidated and therefore uncertain"); *Realauction.com, LLC v. Grant St. Grp., Inc.*, 82 So. 3d 1056, 1060 (Fla. 4th DCA 2011) ("Speculative hope of future business is not sufficient to sustain the tort of interference with a business relationship."). Moreover, the Ferraro Firm can obtain compensation for its services via the New York *Qui Tam* Action; indeed, the Firm has already requested that, should the Motion to Substitute be granted, it be paid through a *quantum meruit* proceeding or charging lien. *Qui Tam* Action, D.E. 192 at 15; *see also Demov, Morris, Levin & Shein v. Glantz*, 53 N.Y.S. 2d 553, 557 (1981).

Third, the "ability" of Plaintiff Ferraro Firm to "properly represent TARS" in the *Qui Tam* Action is not even a cognizable "damage." To the extent a monetary amount can be extrapolated

from this vaguely-described loss, it is the loss of the Firm's contingency fee which, as discussed above, cannot be considered in the amount in controversy.

Finally, Huddleston's actions have not imperiled TARS's "ultimate recovery as relator" in the *Qui Tam* Action; the only thing that is imperiled is recovery by TARS's individual members. The interests of TARS and its members are not identical. *See Chavez v. Coro*, 2019 WL 5209446, at *2 (S.D. Fla. July 18, 2019); *Bartfield v. Murphy*, 578 F. Supp. 2d 638, 650 (S.D.N.Y. 2008). TARS's interest in the *Qui Tam* Action is in maximizing the recovery by the State of New York and thus TARS's proportionate share; likewise, Huddleston's interest is in ensuring a maximum recovery for TARS so that TARS can meet its obligations under the TARS Loan. Given this alignment of goals, TARS's "ultimate recovery" is not a cognizable damage.

In sum, this Court lacks subject matter jurisdiction over the tortious interference claim against Defendant Huddleston, and the Amended Complaint should be dismissed with prejudice.

III.   **The Amended Complaint Fails to State a Claim for Tortious Interference Against Defendant Huddleston.**

Even if the Court had personal jurisdiction over Defendant Huddleston and subject matter jurisdiction over the tortious interference claim, the Court should still dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) because it fails to make out a claim for tortious interference. To survive such a motion to dismiss, a complaint must contain sufficient factual matter which, if accepted as true, would state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must plead more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1262 (11th Cir. 2015).[7] "Imbedded within these elements is the requirement that the plaintiff

---

[7] Tortious interference with a business relationship requires a plaintiff to prove: (1) a business relationship; (2) a defendant's knowledge of the relationship; (3) the defendant's intentional and

establish that the defendant's conduct caused or induced the breach that resulted in the plaintiff's damages." *Enteris Biopharma, Inc. v. Clinical Pharmacology of Miami, Inc*., 2015 WL 12085848, at *10 (S.D. Fla. Mar. 20, 2015). The conclusory allegations in the Amended Complaint do not show (a) that Huddleston's alleged actions were an intentional and unjustifiable interference with Plaintiffs' attorney-client relationship which, in turn, (b) resulted in damages to Plaintiffs; thus, because Plaintiffs cannot meet this "but-for" standard, the Court should dismiss the Amended Complaint's claim against Defendant Huddleston with prejudice under Federal Rule 12(b)(6).

## A.   The Amended Complaint Insufficiently Alleges that Huddleston Intentionally and Unjustifiably Interfered with Plaintiffs' Attorney-Client Relationship.

Plaintiffs assert that Defendant Huddleston "intentionally and unjustifiably interfered" with Plaintiffs' attorney-client relationship in an "intentional and deliberate attempt" to terminate Plaintiffs' contingency fee and to "deprive" Plaintiff Ferraro Firm of its contingent fee in the New York *Qui Tam* Action. Am. Compl. ¶¶ 167. Yet Plaintiffs provide no factual allegations in the Amended Complaint to support these conclusory assertions.[8]

The actions purportedly taken by Defendant Huddleston which give rise to the tortious interference claim consist of: (1) Huddleston, through its counsel, informing Plaintiff TARS, G3 and their respective members that it had acquired the TARS Loan and discovered numerous Events of Default under the Loan Documents and, as successor-in-interest to the Lender, exercised the Lender's contractual rights including the right to assume management of TARS as its attorney-in-fact, *see* Am. Compl. ¶¶ 28, 107; (2) Huddleston sending a copy of the Notice to Plaintiff Ferraro

---

unjustified interference with the relationship; and (4) damage to the plaintiff resulting from the breach of the relationship. *Ethan Allen v. Georgetown Manor*, 647 So. 2d 812, 814 (Fla. 1994).

[8] "To satisfy the intent requirement, the plaintiff must show that the defendant's actions were purposely directed at the interference." *Maxi-Taxi of Fla., Inc. v. Lee Cty. Port Auth*., 2008 WL 1925088, at *16 (M.D. Fla. Apr. 29, 2008). Plaintiffs, do not, and are unable to, make that showing.

Firm directing it to provide a status update on the *Qui Tam* Action and cease work until further instruction, *id.* ¶ 107; *Qui Tam* Action, D.E. 179 at ¶ 4, 180; (3) terminating Plaintiff Ferraro Firm after it had failed to respond to multiple communications from Huddleston as attorney-in-fact for TARS, *see* Am. Compl. ¶ 114; *Qui Tam* Action, D.E. 182; and (4) filing, as attorney-in-fact for TARS, the Motion to Substitute to remove the Ferraro Firm as counsel of record in the *Qui Tam* Action and withdraw the unauthorized TAC, *see* Am. Compl. ¶¶ 31, 114; *Qui Tam* Action, D.E. 178–86; 194–208. Nothing in the Amended Complaint suggests that these acts were at any point motivated by an intent to interfere with Plaintiffs' attorney-client relationship. *See Maxi-Taxi of Fla.*, 2008 WL 1925088, at *16 ("[I]n order to prevail on a tortious interference claim, a plaintiff must establish the defendant's 'intent to interfere,' as opposed to the defendant's mere 'intent to act.'") quoting *Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1223–24 (Fla. 3d DCA 1980). There is no cause of action for interference, as here, which is "only negligently or consequentially effected." *Maxi-Taxi of Fla.*, 2008 WL 1925088, at *16; *see also Romika-USA, Inc. v. HSBC Bank USA*, N.A., 514 F. Supp. 2d 1334, 1340 (S.D. Fla. 2007). Plaintiffs have thus failed to show the intent indispensable for an actionable wrong. *See Enteris Biopharma, Inc.*, 2015 WL 12085848, at *11.

In any event, Defendant Huddleston was "justified" in its actions because it was protecting its own financial interests by exercising its rights as the lender. So long as a company does not engage in "improper conduct," it may take steps to protect its business interests without liability for tortious interference. *Romika-USA*, 514 F. Supp. 2d at 1339; *Networkip, LLC v. Spread Enters., Inc.*, 922 So. 2d 355, 358 (Fla. 3d DCA 2006) ("Protecting a company's own economic interest to reduce the risk of incurring further loss does not constitute intent to damage within the meaning of a cause of action for intentional interference with business relationship."). Florida law also provides that "there is no cause of action for tortious interference when a contract provision

15

expressly reserves the right to interfere." *Romika-USA*, 514 F. Supp. 2d at 1340 (internal citation omitted). Under the Loan Agreement, Events of Defaults entitled Huddleston to exercise the Lender's rights, including the right to assume management of TARS as its attorney-in-fact. *See* Exhibit 1 § 6.4; Exhibit 2 § 9(a). There is nothing in the Amended Complaint to suggest that Huddleston engaged in any improper conduct that would take it outside of its privilege to protect its own business interests. Plaintiffs do not allege, for example, that Defendant Huddleston employed physical violence, misrepresentations, illegal conduct, or threats thereof in acting as attorney-in-fact for TARS. *See Romika-USA*, 514 F. Supp. 2d at 1340. Nor does the Amended Complaint remotely suggest that Huddleston acted solely out of malice. *Escadote I Corp. v. Ocean Three Condo. Ass'n, Inc.*, 307 So.3d 938, 943 (Fla. 3d DCA 2020) (finding claim for tortious interference could not stand where actions were not motivated solely by malice); *see also Mattocks v. Black Ent. Television LLC*, 43. F. Supp. 3d 1311, 1319 (S.D. Fla. 2014).

Simply put, Huddleston's actions to protect its own preexisting contractual rights were consistent with the terms of the Loan Agreement, outweighed Plaintiffs' rights to be free of interference, and are entirely non-actionable. *Duty Free Ams.*, 797 F.3d at 1280. Accordingly, Plaintiffs cannot maintain a claim for tortious interference against Defendant Huddleston, and the Amended Complaint should be dismissed with prejudice for failure to state a claim pursuant to Rule 12(b)(6).

### B.    The Amended Complaint Does Not Sufficiently Allege that Defendant Huddleston's Alleged Interference Resulted in Damages to Plaintiffs.

Plaintiffs also do not show that Plaintiffs' purported damages resulted from Defendant Huddleston's allegedly tortious acts. An "integral element of a claim of tortious interference with a business relationship requires proof of damage to the plaintiff as a result of the breach of the relationship." *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc*., 262 F. Supp. 2d 1334,

1355–56 (S.D. Fla. 1999). As discussed *supra*, Plaintiffs' purported damages consist of attorneys' fees and costs, the prospective loss of the Ferraro Firm's contingency fee in the *Qui Tam* Action, the ability to "properly represent TARS" in that action, and TARS's "ultimate recovery" as relator. Am. Compl. ¶¶ 165–68. None of these vague "categories" suffice for Plaintiffs' burden of pleading damages.

First, a claim for tortious interference does not entitle a plaintiff to attorneys' fees as damages, thus Plaintiffs' alleged damages for "prosecuting the instant matter" fail. *See Fin. Bus. Equip. Sols., Inc. v. Quality Data Sys.*, 2008 WL 4753710, at *5 (S.D. Fla. Oct. 27, 2008). Second, the attorneys' fees Plaintiffs incurred in prior matters have no causal relationship with Defendant Huddleston's alleged tortious acts because both actions were initiated and resolved before Huddleston was even incorporated. *See* Am. Compl. ¶¶ 9, 87, 94, 95, 97, 99; *see also OneSource Facility Servs. v. Mosbach*, 2008 WL 11430040, at *6 (M.D. Fla. Nov. 18, 2008). Third, attorneys' fees for "defending" the Motion for Substitution in the *Qui Tam* Action, as well as the prospective loss of the Ferraro Firm's contingency fee, are barred by Florida's economic loss rule which provides that disappointed economic expectations are protected by contract, not tort law. *See Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 208 F. Supp. 2d 1310, 1314 (S.D. Fla. 2002). Under its engagement letter with TARS, Plaintiff Ferraro Firm has a potential contractual remedy should TARS recover from the *Qui Tam* Action. Am. Compl., Ex. A ¶ 12 (D.E. 10-1).

Moreover, the prospective loss of the Ferraro Firm's contingency fee and TARS's potential "ultimate recovery" as relator, Am. Compl. ¶ 168, is hypothetical and speculative. "Under Florida law, the general rule is that anticipated profits of a commercial business," such as the supposed future loss of fees, are "too speculative and dependent upon changing circumstances to warrant a judgment for their loss." *AlphaMed Pharm. Corp. v. Arriva Pharm., Inc.*, 432 F. Supp. 2d 1319,

17

1339 (S.D. Fla. 2006) (internal citation omitted). Lost profits are only recoverable when the plaintiff presents evidence sufficient to determine their amount with a "reasonable degree of certainty." *Id.* As discussed *supra*, Plaintiff TARS's purported future monetary loss would not materialize until the New York court in the *Qui Tam* Action grants the Motion to Substitute Counsel and dismisses the Third Amended Complaint, and TARS prevails in recovering funds for the State of New York and, in turn, itself. For Plaintiff Ferraro Firm to lose its contingency fee, all of the foregoing events must occur, and Defendant Huddleston must obtain a judgment in its favor in the S.D.N.Y. Action. Given this necessary series of conditional events, Plaintiffs cannot show with a reasonable degree of certainty that a future monetary loss will materialize. *See Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1177 (11th Cir. 2002); *Sostchin v. Doll Enters., Inc.*, 847 So. 2d 1123, 1128 (Fla. 3d DCA 2003).

Finally, the alleged damage of Plaintiff Ferraro Firm's "ability to properly represent" Plaintiff TARS in the *Qui Tam* Action is not even a monetary harm. Huddleston is unaware of any basis that would allow for such type of recovery in a tortious interference claim, nor do Plaintiffs point to any. *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Mere conclusions, such as Ferraro Firm's alleged harm in its ability to properly represent TARS, "are not entitled to the assumption of the truth." *Id.*

In sum, the Amended Complaint does not include any factual allegations to support the existence of any damages to Plaintiffs, much less that such damages were caused by Huddleston's purported intentional and unjustifiable interference with Plaintiffs' attorney-client relationship. Accordingly, the Court should dismiss, with prejudice, the tortious interference count against Defendant Huddleston for failure to state a claim.

**IV.**   <u>**Plaintiff TARS Lacks Standing to Assert Claims Against Defendant Huddleston.**</u>

    **A.**   **Plaintiff TARS Lacks Article III Standing.**

Whether a plaintiff has standing under Article III of the United States Constitution is a threshold jurisdictional issue. *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1083 (11th Cir. 2019). To satisfy this prerequisite, a plaintiff must show that it has (1) suffered a "concrete and particularized" and "actual or imminent" injury in fact; which is (2) fairly traceable to the challenged conduct of the defendant; and (3) that it is likely a favorable decision in the case will redress the injury. *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). TARS, however, has suffered none of the harms alleged in the Amended Complaint. Neither TARS nor Huddleston was a party to the 2017 Florida arbitration, and both the arbitration and the Michigan action were resolved prior to Huddleston's formation. Am. Compl. ¶ 9. The Motion for Substitution in the *Qui Tam* Action was filed on behalf of TARS by its attorney-in-fact Huddleston. Any argument that TARS is responsible for defending itself against a motion brought on its behalf is circular and nonsensical. Lastly, a claim by either Plaintiff for defense costs in the instant action cannot stand for reasons discussed *supra*. With no cognizable injury, Plaintiff TARS lacks standing and should be dismissed with prejudice under Rule 12(b)(1).

    **B.**   **TARS Lacks the Authority to Bring the Amended Complaint**.

The actions taken here by Huddleston, as successor-in-interest to the Lender, were in exercise of its rights under the Loan Documents, which provide that, upon declaration of an Event of Default, the Lender may act as attorney-in-fact for the Borrowers. Am. Compl. ¶¶ 28, 107. Because this power is self-effectuating, it is irrelevant whether the members of TARS or the Ferraro Firm agree that an Event of Default has occurred. *See, e.g., Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp*., 534 F. Supp. 2d 1290, 1301, 1308 (S.D. Fla. 2008). At this point in time, it is Huddleston – not the original members of TARS, nor the Ferraro Firm – which

controls the management and activities of TARS, and only Huddleston that has the right to file an action on behalf of TARS. *See, e.g., First Telebanc Corp. v. First Union Corp.*, 2007 WL 9702557, at *5–6 (S.D. Fla. Aug. 6, 2007) (dismissing action where President and CEO lacked corporate authority to commence action on behalf of the bank). As such, Plaintiff TARS must be dismissed from this action with prejudice.

## CONCLUSION

For the reasons stated above, Defendant Huddleston Capital Partners VIII LLC respectfully requests that the Court enter an order dismissing with prejudice the Amended Complaint against it pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6).[9]

---

[9] Alternatively, if the Court denies Huddleston's Motion, Defendant Huddleston respectfully requests a stay of this action pending resolution of the S.D.N.Y. Action for reasons of judicial efficiency. A ruling in the S.D.N.Y. Action that Events of Default under the Loan Agreement occurred and that Huddleston properly exercised its rights as attorney-in-fact for TARS would moot the issues with respect to Huddleston here. *See* Section III.A. *supra*. In such circumstances, a stay is warranted. *See, e.g., Stanton v. Berkley Assur. Co.*, 2020 WL 6781524, at *1 (S.D. Fla. July 17, 2020).

Date: May 26, 2021                          Respectfully submitted,

                                            s/Martha R. Mora
                                            Martha R. Mora, Esq.
                                            Florida Bar No. 648205
                                            mmora@avilalaw.com
                                            Daniel O. Mena, Esq.
                                            Florida Bar 59579
                                            dmena@avilalaw.com
                                            AVILA RODRIGUEZ HERNANDEZ
                                            MENA & GARRO LLP
                                            2525 Ponce de Leon Boulevard, Suite 1225
                                            Coral Gables, Florida 33134
                                            Telephone: (305) 779-3560

                                            Mari K. Bonthuis (*pro hac vice* to be filed)
                                            STERLINGTON, PLLC
                                            228 Park Avenue S #97956
                                            New York, New York 10003
                                            Tel: (212) 433-2879
                                            Fax: (212) 896-9985
                                            MKB@sterlington.net

                                            *Counsel for Defendant Huddleston*
                                            *Capital Partners VIII LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed and served by

CM/ECF on May 26, 2021 on all counsel of record, including those identified on the Service List

below.

s/Martha R. Mora
Martha R. Mora, Esq.

## SERVICE LIST

James L. Ferraro, Esq.
jlf@ferrarolaw.com
Dick M. Ortega, Esq.
dmo@ferrarolaw.com
Natalia Maria Salas, Esq.
nms@ferrarolaw.com
Matthew Daniel Gutierrez, Esq.
mdg@ferrarolaw.com
The Ferraro Law Firm, P.A.
600 Brickell Avenue, Suite 3800
Miami, Florida 33131
Telephone: (305) 375-0111
Facsimile: (305) 379-6222
*Attorneys for Plaintiffs*

Eduardo F. Rodriguez, Esq.
eddie@efrlawfirm.com
ERF Law Firm
1 Alhambra Plaza, Suite 1225
Coral Gables, Florida 33134
Telephone: (305) 340-0034
*Counsel for Defendants Kenneth Platt*
*Elder and G3 Analytics LLC*